IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BLAIR S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 1:21-cv-01855-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

        Plaintiff Blair S. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

Plaintiff applied for SSI on April 15, 2019, initially alleging a disability onset date of August 19, 2011. Tr. 97. Plaintiff later amended his alleged onset date to April 15, 2019.[2] Tr. 14. Plaintiff was 52 years old on his amended alleged onset date. Tr. 97. Plaintiff has not worked since 2003, when he was a production worker, sanding and staining furniture, and a convenience store clerk. Tr. 266. Plaintiff alleges disability due to severe generalized anxiety disorder, major depressive disorder, traumatic brain injury, severe right neuroforaminal stenosis at L4-L5, compression of right L4 nerve root in his back, L5-S1 moderate/severe bilateral neuroforaminal stenosis, L2-L3 moderate stenosis and crowding, and epidural lipomatosis L3-L4, L5-S1 Tr. 97. He alleges that the pain from his back and legs, in combination with his anxiety and depression make him unable to work. *Id.* Plaintiff had a hearing with an Administrative Law Judge ("ALJ") and the ALJ denied Plaintiff's claim by a written decision on March 10, 2021. Tr. 11-39. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly found Dannielle Byers, FNP, medical opinion unpersuasive; and (3) failing to consider or acknowledge lay witness testimony offered by Plaintiff's romantic partner and stepdaughter. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for an award of benefits.

---

[2] Plaintiff also initially filed for disability insurance benefits ("DIB"), but because he amended his alleged onset date to a date past his date last insured of September 30, 2003, he agreed at his hearing he was not entitled to DIB. Tr. 14.

2 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 884 F.2d 1394 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests on the claimant for steps one through four and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that

the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Here, the ALJ determined Plaintiff had the following severe impairments: "spondylosis, anterolisthesis, disc herniation, disc narrowing, and stenosis of the lumbar spine with radiculopathy; osteoarthritis, medical meniscal tear of the right knee; gout; obesity; an affective disorder (called either major depressive disorder or unspecified mood disorder); an anxiety disorder (called either panic disorder or generalized anxiety disorder); and somatic symptom disorder." Tr. 17. The ALJ concluded Plaintiff had the ability to perform light work as defined in 20 C.F.R. § 416.967(b), but limited to

> standing and/or walking four hours and sitting six hours of an eight-hour workday; never climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; no exposure to hazards, including unprotected heights or operating heavy machinery; understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time; sustaining only ordinary routines and making no more than simple, work-related decisions; and tolerating no more than occasional interaction with coworkers, supervisors, and the general public.

Tr. 20. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could perform jobs existing in significant numbers in the national economy, including electronics worker, bench assembler of small products, and power screwdriver operator. Tr. 31. The ALJ therefore determined that Plaintiff was not disabled. *Id.*

4 – OPINION AND ORDER

I. **Plaintiff's Subjective Allegations**

Plaintiff argues that the ALJ erred by improperly discrediting his subjective symptom testimony. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and quotations omitted). If the first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ next determines the intensity and persistence of symptoms by considering "all the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015.

Plaintiff testified at his hearing of debilitating pain in his back and legs, as well as severe anxiety. Tr. 50, 57. Plaintiff's medical record is extensive and, although most of the records are prior to his alleged onset date, it illustrates a long history of back and knee pain, as well as treatment for anxiety and depression. His back pain eventually led to a microdiscectomy at his L4-L5 vertebrae in March 2019. Tr. 802. Plaintiff also suffered a lateral meniscus tear in his knee, which led to a knee scope in January 2020. Tr. 1000, 1005. Although both surgeries led to some relief, six months later Plaintiff was still suffering from "chronic axial low back pain." Tr. 1091. His medical providers explained there was no surgical answer to this back pain and referred Plaintiff for pain management and physical therapy. Tr. 1091, 1095. Plaintiff testified

5 – OPINION AND ORDER

that his pain makes it difficult to walk more than four to six blocks without a break, and that he cannot stand for more than two to four minutes without severe pain. Tr. 55, 62.

Plaintiff also testified that he suffered eleven significant head traumas, seven of which led to unconsciousness. Tr. 56-57. One incident occurred in 2013, when Plaintiff was struck by a large branch when felling a tree. Tr. 622. During the relevant time period, Plaintiff sought medical care for his anxiety, panic attacks, and depression. *See, e.g.,* Tr. 902, 897, 884, 1213, 1071, 1080. Treatment included therapy as well as prescription medications. Plaintiff experienced severe side effects with most anti-anxiety and anti-depression medications, which his medical provided confirmed by GeneSight testing. Tr. 858 ("Patient has had significant difficultly finding medications without adverse reaction – underwent GeneSight testing, which revealed limited selection for effective medication."). Plaintiff's medical providers tried the following medications for Plaintiff from April 2019 through January 2021: Wellbutrin (Tr. 902), Prozac, (Tr. 897), Buspar (Tr. 897), Pristiq (Tr. 884), Viibryd (Tr. 876); Temazepam (Tr. 851), Fetzima (Tr. 40), Latuda (Tr. 1213), Geodon (Tr. 1085), Remeron (Tr. 1154), and Abilify (Tr. 1159). Plaintiff testified that he gets "real irritated and short" with people, his depression makes it difficult for him to do anything three to four days a week, and that his anxiety makes him scared. Tr. 60, 62.

Although the ALJ stated that Plaintiff's testimony was inconsistent with the objective medical evidence, he failed to identify any inconsistences. Instead, the ALJ concluded that "[d]espite the claimant's subjective complaints, his physical examinations generally showed that he was well developed and well nourished, that he was in no acuate distress, his cardiovascular

and respiratory examinations were normal, his neck was supple, his abdomen was normal, his extremities were normal, he had no motor or neurologic deficit, and his gait and balance were normal." None of these observations are inconsistent with Plaintiff's testimony about his limitations. Tr. 28. Regarding his mental impairments, the ALJ simply stated that "his mental status examinations were generally unremarkable; and that "the claimant's overall treatment of his mental impairments was conservative, with no hospitalizations or emergency care." Tr. 29.

Though the Court could make reasonable inferences based on the ALJ's summary of the evidence, "the credibility determination is exclusively the ALJ's to make." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The Court may only review the reasons the ALJ asserts, of which there are none here. *See id.* To the extent the ALJ concluded that Plaintiff's "normal exam findings" showed improvement, such a conclusion was in error. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick" isolated examples of improvement without consideration of the overall treating record). The ALJ also erred by finding Plaintiff's treatment for his mental impairments as conservative. Other district courts have considered whether the combination of prescription medication and therapy are "conservative treatment" for mental health impairments and have found they are not. *See, e.g., Merker v. Astrue*, No. CV 10-4058 JCG, 2011 WL 2039628, at *7 (C.D. Cal. May 25, 2011) ("However, based on Plaintiff's treatment history of having weekly therapy sessions and using medication, the Court cannot conclude that Plaintiff's treatment was conservative when viewed holistically, and on this record."); *Goodwin v. Comm'r of Soc. Sec. Admin.*, No. CIV. 09-00469 LEK, 2011

7 – OPINION AND ORDER

WL 4498962, at *5 (D. Haw. Sept. 26, 2011) (finding lack of inpatient medical care does not render claimant's mental health treatment "conservative").

The ALJ erred by failing to identify which testimony he found credible and failing to link that testimony to specific parts of the record supporting his non-credibility determination. *Brown-Hunter*, 806 F.3d at 494; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review."). This error was not harmless. *See Brown-Hunter*, 806 F.3d at 494 ("An error is harmless only if it is 'inconsequential to the ultimate nondisability [sic] determination' . . . or if despite the legal error, 'the agency's path may reasonably be discerned.'"). Because the ALJ failed to identify any reviewable reasons why he found Plaintiff's testimony not credible, the Court cannot discern the Commissioner's path. *See id.* And any reasons the Court can discern are not supported by substantial evidence. Further, though "the ALJ summarized a significant portion of the administrative record in support of [his] RFC determination, providing a summary of medical evidence in support of a [RFC] finding is not the same as providing clear and convincing reasons for finding [Plaintiff's] symptom testimony not credible." *Id.* Such error was not harmless, and therefore the ALJ's decision is revered.

## II.  Medical Opinion

Plaintiff next argues that the ALJ erred in finding the medical opinion of family nurse practitioner Dannielle Byers not persuasive. Under the new regulations for evaluating medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling

8 – OPINION AND ORDER

weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationships between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.* at 787.

     Byers began seeing Plaintiff in March 2015 and saw him an average of one to two visits per month. Tr. 961, 1136. On February 4, 2021, she completed a Treating Source Statement for Plaintiff. Tr. 1136-41. She diagnosed Plaintiff with lumbar disc herniation; history of traumatic brain injury, with associated psychological manifestations; severe recurrent major depressive disorder; generalized anxiety disorder; and chronic bilateral low back pain without sciatica. Tr. 1136. She described the signs of Plaintiff's diagnoses as: "pain w/ palpation lumbar spine, finding of paraspinous muscle spasms bilateral lumbar region, x-ray findings [of] moderate loss of disc height lumbar [] disc herniation, spinal arthritis" that was confirmed by an MRI. *Id.* She

9 – OPINION AND ORDER

opined Plaintiff could sit for 60 minutes at one time and could stand/walk for 15-20 minutes at a time. Tr. 1138. He could sit for eight hours in a workday and stand/walk two to three hours in an eight-hour workday. *Id.* Byers opined that Plaintiff could occasionally lift ten pounds or less, but never lift more than that. Tr. 1139. Finally, she opined that Plaintiff would be off task for more than 25% of the day and miss more than four days of work per month due to "chronic back pain, severe anxiety/panic attacks." Tr. 1140.

The ALJ found Byers's opinion not persuasive because her findings were "subjective in nature" and the "claimant's specialists . . . did not corroborate her limited findings." Tr. 27. An ALJ need not accept a physician's opinion that is inadequately supported by clinical findings. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). But here, Byers's opinion is based on more than Plaintiff's subjective complaints of pain. As the opinion itself notes, Plaintiff's disc herniation and spinal arthritis was confirmed by x-rays and MRIs. Tr. 1137. And such findings were confirmed by Plaintiff's specialists. Tr. 1132 (review of MRI showed "severe canal stenosis at L4-5 secondary to a broad-based disc bulge in combination with facet disease, epidural lipomatosis"). The ALJ's reasons for rejecting Byers's opinion were not supported by substantial evidence and was harmful error.

### III.  Lay Witness Evidence

Finally, Plaintiff argues that the ALJ erred by not considering the lay witness testimony offered by his romantic partner and his stepdaughter. "Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and

quotation omitted). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical source" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). But, even under the new regulations, the ALJ must still articulate an assessment of the lay witness statements. *Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021).

      Here, the ALJ failed to address Plaintiff's partner's Third-Party Function Report and a letter written by his stepdaughter. Plaintiff's partner has been with him for eighteen years and explained all she takes on to manage the household due to Plaintiff's impairments, Plaintiff's limitations, and that Plaintiff is still in severe pain even after his back surgery. Tr. 323-25, 329. Plaintiff's stepdaughter describes the changes she has seen in Plaintiff over the nineteen years she has known him from his brain injuries. Tr. 402. The ALJ's failure to address both of these statements was harmful error.

## IV. <u>Remedy</u>

      As the ALJ erred, the question is whether to remand for further proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been met, which requires:

11 – OPINION AND ORDER

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

If Plaintiff's subjective symptom testimony and Byers's medical opinion were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified that three or four days a week he has a "heavy, heavy blanket of depression" over him, and that he cannot stand for more than two to four minutes Tr. 57, 62. Byers opined that Plaintiff would be off task 25% of a workday and would miss more than four days of work a month due to his pain and anxiety. Tr. 1140. The vocational expert confirmed at the hearing that being off task 10% or more during a day or missing "two, three, or more days every month" would disqualify Plaintiff from competitive employment. Tr. 66.

Defendant argues that remand is appropriate because Plaintiff makes "no attempt to address the normal exam findings and improvement noted by the ALJ" and that this "evidence shows the record is not free from conflicts and ambiguities." The Court disagrees. As noted above, the ALJ's "normal exam findings" ignores the overall medical record. *See Ghanim*, 763 F.3d at 1164 (ALJ may not "cherry-pick" isolated examples of improvement without consideration of the overall treating record). Defendant's argument is not persuasive and does not convince this Court that further proceedings are appropriate or necessary. As indicated above, under the Ninth Circuit's credit-as-true standard, if Byers's medical opinion about how often Plaintiff would be off task and miss work is true, the ALJ would be required to find him disabled. This is therefore

12 – OPINION AND ORDER

the rare instance where remand for an award of benefits is appropriate. Plaintiff satisfies all three requirements under *Garrison*, and the Court sees not purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED, and this case is remanded for an award of benefits.

IT IS SO ORDERED.

DATED this 13th day of July 2023.

> s/ Michael J. McShane
> Michael J. McShane
> United States District Judge